**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **GARY L. LACY,** ) | **CASE NO. 5:05CV2362** |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **JUDGE PETER C. ECONOMUS** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | **MEMORANDUM OPINION &** |
| Respondent. ) | **ORDER** |

This matter is before the Court upon Petitioner, Gary L. Lacy's, *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Dkt. #1). Also before the Court is the Government's Response in Opposition to Petitioner's Motion (Dkt. #8) and Petitioner's reply (Dkt. #10). For the reasons set forth below, Petitioner's motion is **DENIED**.

**I.    FACTUAL BACKGROUND**

On June 23, 2004, a federal grand jury indicted Petitioner, Gary L. Lacy, for violations of Title 18 U.S.C. § 2113(a), Bank Robbery by Force or Violence, and 18 U.S.C. § 2, Aiding and Abetting. Specifically, count 1 of the indictment charged:

> On or about April 15, 2004, in the Northern District of Ohio, Eastern Division, GARY L. LACY, the defendant herein, and another not named herein, by force, violence and intimidation did take from the person and presence of tellers at the Killbuck Savings Bank, Mount Hope Village Branch, 8115 State Route 241, Millersburg, Ohio, approximately $4,788.00, monies belonging to and in the care, custody, control,

> management and possession of Killbuck Savings Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

(Case No. 5:04cr326, Dkt. #6). Petitioner entered a plea of not guilty to the charged offenses at his arraignment on June 30, 2004.

Petitioner's defense counsel at that time, Assistant Federal Public Defendant Jacqueline A. Johnson, entered into plea negotiations with the Assistant United States Attorney. As a result of those plea negotiations, the Government filed a superceding information reducing Petitioner's charge to Accessory after the Fact, a violation of 18 U.S.C. § 3. Count 1 of the superceding information charged:

> On or about April 15, 2004, in the Northern District of Ohio, Eastern Division, the defendant, GARY L. LACY, knowing that an offense against the United States had been committed, to wit, bank robbery of the Killbuck Savings Bank, Mount Hope Village Branch, 8115 State Route 241, Millersburg, Ohio, did receive, relieve, comfort, and assist the offender, Joshua S. Hamilton, in order to hinder and prevent the offender's apprehension, trial and punishment, all in violation of Title 18, United States Code, Section 3.

(Case No. 5:04cr326, Dkt. #18).

On October 13, 2004, Petitioner appeared before this Court for a hearing on Petitioner's request for new counsel. At the hearing, Petitioner initially asked the Court to appoint new counsel. However, after a brief discussion with counsel, Petitioner stated to the Court that counsel had "just advised [him] of a deal that could possibly be brought about here between me and the government" and that "[a]n offer has been put on the table, your Honor, and I'm going to accept it and I will keep Ms. Johnson as my counsel." (Case No. 5:04cr326, Dkt. #38 at 10, Transcript of Request for New Counsel Proceedings).

Petitioner, accompanied by counsel, appeared before this Court for an arraignment and plea hearing on October 14, 2004. (Case No. 5:04cr326, Dkt. #17). Petitioner was still represented by AFPD Johnson at that time. At the plea hearing, the Court engaged Petitioner in the plea colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Petitioner indicated to the Court that he had reviewed the Government's superceding information with counsel and that he was satisfied with counsel's representation and advice. (Case No. 5:04cr326, Dkt. #37 at 4-5, Transcript of Arraignment and Plea Proceedings).

Petitioner was scheduled for sentencing on February 3, 2005. Petitioner again appeared before this Court accompanied by AFPD Johnson. At his sentencing hearing, Petitioner informed the Court that he wished to withdraw his guilty plea and asked the Court to provide new counsel. (Case No. 5:04cr326, Dkt. #39). The Court appointed Attorney Neal Atway as Petitioner's new counsel. (Case No. 5:04cr326, Dkt. #39).

On May 24, 2005, Petitioner, through new counsel, filed a "Motion to Withdraw Plea of Guilty," which this Court denied on May 26, 2005. (Case No. 5:04cr326, Dkt. #26, 27). On May 26, 2005, Petitioner pleaded guilty to count 1 of the superceding information. On that same date, this Court sentenced Petitioner to, inter alia, 39 months imprisonment with three years of supervised release. (Case No. 5:04cr326, Dkt. #28, 29).

Petitioner appealed this Court's decision to the United States Court of Appeals for the Sixth Circuit. (Case No. 5:04cr326, Dkt. #30, Notice of Appeal). On October 11, 2005, the Sixth Circuit granted Petitioner's motion to voluntarily dismiss his appeal. (Case No. 5:04cr326, Dkt. #35).

On October 6, 2005, Petitioner filed the present Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Petitioner contends that his first defense counsel, AFPD Jacqueline Johnson, provided ineffective assistance of counsel when she failed to challenge the sufficiency of the Government's evidence against Petitioner. Petitioner further contends that his second defense counsel, Attorney Neal Atway, acted ineffectively by failing to raise "that former counsel . . . failed to challenge the prosecution's evidence," for failing to "challenge the evidence," and for failing to raise "the issue that Petitioner's rights were violated when this Court granted Mrs. Johnson's request to withdraw from any further representation due to conflict of interest."

## II. STANDARD OF REVIEW

"To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994). Furthermore, 28 U.S.C. § 2255 requires a district court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." Green v. United States, 445 F.2d 847, 848 (6th Cir. 1971); Bryan v. United States, 721 F.2d 572, 577 (6th Cir. 1983).

## III. ANALYSIS

As Petitioner alleges ineffective assistance of counsel in relation to each of the claims asserted in the present motion, this Court will review those claims to determine whether

defense counsel effectively represented Petitioner under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court set out a two-part test to evaluate ineffective assistance of counsel claims. In a successful claim, a criminal defendant must show (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 688-94. In short, a petitioner must demonstrate both deficient performance and prejudice. Id. at 686.

The Supreme Court has also held that a court's review of counsel's performance "must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689. Furthermore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Darden v. Wainright, 477 U.S. 168, 185-86 (1985)(citations omitted).

*First Counsel*: *Jacqueline Johnson*

Petitioner asserts that his first defense counsel, AFPD Jacqueline Johnson, "failed to advocate [his] cause" and "deprived [him of his] right[] to a fair trial" by failing "to subject evidence to adversarial testing in advance." (Dkt. #1). Essentially, Petitioner contends that he did not enter into his guilty plea knowingly, intelligently and voluntarily. Petitioner's own statements, however, refute this contention.

On October 14, 2004, Petitioner entered into a plea agreement setting forth the

-5-

elements of the charges brought against him, the agreements and stipulations of the parties, and the factual bases for the charges. Petitioner signed and dated the agreement, declaring that he had read the plea agreement, discussed it with his attorney, and understood and approved of its provisions.

Also on that date, the Court held a plea hearing and questioned Petitioner at length in order to determine the voluntariness of Petitioner's plea. After swearing him in, the Court explained to Petitioner his right to have counsel during all stages of the proceedings (Case No. 5:04cr326, Dkt. #37, Plea Hearing at 4) and the ramifications of his waiver of indictment (Case No. 5:04cr326, Dkt. #37, Plea Hearing at 14). Petitioner indicated that he understood the nature of the rights he was giving up and that he nonetheless wished to enter a guilty plea.

The Court also questioned Petitioner as to his counsel's performance:

| | |
|---|---|
| THE COURT: | Have you had ample opportunity to discuss the charge of being an accessory after the fact with your counsel, Ms. Johnson? |
| THE DEFENDANT: | Yes, I have. |
| THE COURT: | Have you told Ms. Johnson everything you know about your case? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And has Ms. Johnson fully informed you of all the facts and circumstances that form a basis for this charge, and, if any, any defenses that you might have to the charge? |
| THE DEFENDANT: | Yes, she has. |
| THE COURT: | Did she also tell you about the discussions she had with Mr. Bauer who represents the government in this case? |

| | |
|---|---|
| THE DEFENDANT: | Yes. |
| THE COURT: | And is your willingness to plead guilty to this charge the result of those discussions that she told you about that she had with Mr. Bauer? |
| THE DEFENDANT: | Yes, it is, your Honor. |
| THE COURT: | Are you satisfied with Ms. Johnson's representation and advice given to you in this case? |
| THE DEFENDANT: | Yes, I am. |

(Case No. 5:04cr326, Dkt. #37, Plea Hearing at 4-5).

During his plea hearing, Petitioner affirmatively indicated that his counsel had investigated and discussed with him the facts of the case, possible defenses, and the plea discussions counsel had with the government. Petitioner also indicated that his attorney had explained the nature and elements of the charges to which he was pleading:

| | |
|---|---|
| THE COURT: | Okay. The record should indicate that the Court has been given a written plea agreement, and for the record, Mr. Lacy, is that your signature affixed to the plea agreement? |
| THE DEFENDANT: | Yes, it is. |
| THE COURT: | Did you read and discuss the plea agreement with your counsel before you signed it? |
| THE DEFENDANT: | Yes, I did. |
| THE COURT: | Do you have any questions about the plea agreement? |
| THE DEFENDANT: | No, I do not. |

(Case No. 5:04cr326, Dkt. #37, Plea Hearing at 9-10). A few moments later, the Court again

asked Petitioner if he understood the terms of the plea agreement:

| | |
|---|---|
| THE COURT: | . . . is there anything about the plea agreement that you don't understand? |
| THE DEFENDANT: | No, sir, I understand it. |
| THE COURT: | Has anyone made any other or different promises or assurances to you to get you to plead guilty to this charge? |
| THE DEFENDANT: | No, they have not. |

(Case No. 5:04cr326, Dkt. #37, Plea Hearing at 12).

Petitioner cannot contradict the clear affirmations he made during his plea hearing by now asserting that his counsel failed to investigate or explain the charges and the possible defenses to him.[1] "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United States v. Todaro, 982 F.2d 1025, 1030 (6th Cir. 1993) ("[W]e recognize that a defendant who expressly represents in open court that his guilty plea is voluntary 'may not ordinarily' repudiate his statements to the sentencing judge.")(quoting Fontaine v. United States, 411 U.S. 213, 215 (1973)). Therefore, this claim is denied.

*Second Counsel: Neal Atway*

Petitioner next argues that his second defense counsel, Neal Atway, "rendered

---

[1] Indeed, it was Petitioner's clear statements made during this plea hearing that the Court relied upon in determining that Petitioner's guilty plea was voluntarily, knowingly, and intelligently made. The Court denied Petitioner's subsequent motion to withdraw his guilty plea based on this determination, as discussed *infra*.

incompetent advice" for failing to "challenge the evidence" and for failing to argue that Petitioner's rights were "violated" when this Court allowed AFPD Johnson to withdraw as counsel. (Dkt. #1, 10).

Petitioner was originally scheduled to be sentenced by this Court on February 3, 2005. However, at the sentencing hearing, Petitioner indicated to the Court that he wished to withdraw his guilty plea to the superceding information. (Case No. 5:04cr326, Dkt. #39, Sentencing Hearing at 2). He also requested that new counsel be appointed to his case. The Court then appointed Neal Atway. (Case No. 5:04cr326, Dkt. #39 at 3,6).

A review of the record reveals Mr. Atway acted zealously on behalf of Petitioner. Four days after being appointed by the Court, Mr. Atway requested discovery and sentencing guideline information from Assistant United States Attorney Thomas Bauer. (Dkt. #8, Exh. 2). Shortly thereafter, Mr. Atway filed a Motion to Modify Conditions of Release, which this Court granted, so that Petitioner could better assist counsel in defending his case. (Case No. 5:04cr326, Dkt. #24, 25). On May 24, 2005, Mr. Atway filed a "Motion to Withdraw Plea of Guilty" on Petitioner's behalf. (Case No. 5:04cr326, Dkt. #26).

On May 26, 2005, Petitioner again appeared before this Court for a hearing on the motion to withdraw his guilty plea. At the hearing, Mr. Atway presented to the Court Petitioner's motivation for withdrawing his plea of guilty:

> MR. ATWAY: Mr. Lacy's son, Steven, who is 13 years of age, was a passenger in a vehicle that was traveling at an excessive rate of speed. And Mr. Lacy's son was significantly injured.
>
> ***

> This was going on in Mr. Lacy's head when he came in to plead guilty before this Court. Further, Mr. Lacy was assaulted at the Mahoning County jail by an inmate who is awaiting a trial on a murder case, and Mr. Lacy came into Court, he indicated to me, in October with a black eye.
>
> Those things, being assaulted in county jail and his strong desire to go see his son who was in the hospital, contributed to his decision to plead guilty because he felt at that point in time after speaking with his counsel that he had a strong chance of getting bond after a plea.

(Case No. 5:04cr326, Dkt. #40, Sentencing Hearing at 2-4).

Despite Mr. Atway's efforts, the Court denied Petitioner's motion to withdraw his guilty plea. The Court relied heavily on Petitioner's statements to the Court during the Rule 11 plea colloquy at the October 14, 2004 plea hearing:

> THE COURT: During the entire colloquy the defendant repeatedly indicated that he understood. And in addition, of course, the Court advised the defendant of his constitutional rights, the trial rights that he's entitled to, and the fact that he was giving up all of his constitutional rights if I accept his plea to the superceding information.
>
> \*\*\*
>
> At the defendant's plea hearing . . . the defendant had expressly and repeatedly admitted his guilt.
>
> Let's put it in perspective. I asked Assistant U.S. Attorney Thomas Bauer to present the factual basis for the guilty plea, and the factual basis, according to the record, states as follows:
>
> "On April 15, 2004, there was a bank robbery at the Killbuck Savings Bank, Millersburg, Ohio. A lone unarmed man went in and robbed the Killbuck Savings Bank of approximately 47 to 49 hundred dollars. Killbuck Savings Bank was federally insured. On April 15, the same day as the bank robbery, 2004

> . . . Mr. Lacy became aware that Joshua Hamilton had robbed the Killbuck Savings Bank in Millersburg, Ohio. Notwithstanding this information, Lacy drove Hamilton from Millersburg, Ohio to Ashland, Ohio in order to hinder or prevent his apprehension."
>
> The Court then inquired of the Defendant Lacy, and the Court asked the following question:
>
> "Mr. Lacy, do you also agree with Mr. Bauer's summary of what you did" . . . And then I turned to Mr. Lacy. This is the important part, what Mr. Lacy had to say.
>
> Again, "Mr. Lacy, do you also agree with Mr. Bauer's summary of what you did?
>
> Mr. Lacy responded, "Yes, I do."
>
> My next question, "Is there anything that Mr. Bauer said that was not correct?"
>
> The defendant, "No. Everything he said is correct."

(Case No. 5:04cr326, Dkt. #40, Sentencing Hearing at 9, 11-13). The Court then took into account Petitioner's argument for withdrawing his plea of guilty:

> THE COURT: Mr. Lacy is suggesting that he entered his plea for the sole purpose of securing bond to spend some time with his recently injured son?
>
> MR. ATWAY: Yes, your Honor.
>
> THE COURT: But that never came up during the plea hearing . . . it was not until Ms. Johnson negotiated with Mr. Bauer to plead to a superceding information that he agreed to enter a plea.
>
> \*\*\*
>
> The record is clear. All the evidence before the Court puts the Court in the position that I can only reach one conclusion, that

-11-

>>is that the defendant's plea was knowingly and voluntarily made, as I indicated on the record at the time, with full knowledge of the consequences.

(Case No. 5:04cr326, Dkt. #40, Sentencing Hearing at 17-18).  Contrary to Petitioner's assertion in his § 2255 motion, Mr. Atway diligently argued the motion to withdraw Petitioner's guilty plea.  Accordingly, counsel's actions cannot be deemed unreasonable simply because they were unsuccessful.  Petitioner's argument fails on this claim as well.

## IV.   EVIDENTIARY HEARING

Finally, section 2255 requires a district court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief."  See Green, 445 F.2d at 848; Bryan, 721 F.2d at 577 (6th Cir. 1983).

In the case *sub judice*,  Petitioner is not entitled to an evidentiary hearing because "the motion and the files and the records of the case conclusively show that [Petitioner] is entitled to no relief."  Green, 445 F.2d at 848.  Accordingly, Petitioner's request for an evidentiary hearing is denied.

## V.   CONCLUSION

For the reasons stated above, the Court hereby orders the petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody is **DENIED**.  Accordingly, this action is **DISMISSED**.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal

from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c);   Fed.R.App.P. 22(b).

**IT IS SO ORDERED.**

>  **/s/ Peter C. Economus - April 7, 2006**
>  **PETER C. ECONOMUS**
>  **UNITED STATES DISTRICT JUDGE**